UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 2:15-CR-124-PPS-JEM |
| | ) |
| ROBERT BATTLE, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Robert Battle is a federal prisoner who seeks compassionate release or a reduction of his sentence. He entered a plea of guilty to a charge of discharging a firearm during and in relation to a drug trafficking crime causing death, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(j)(1), and is serving a sentence of 240 months' imprisonment at FMC Lexington. [DE 38; DE 63.] The online portal of the Federal Bureau of Prisons (www.bop.gov) reflects that Battle's projected release date is October 24, 2032. His Presentence Report adequately sets forth the facts of the case. [DE 50.] It's enough to say for present purposes that while holding elected office as a Councilman in East Chicago, Battle trafficked large quantities of illegal drugs and killed one of his associates in a violent altercation.

Now before me is Battle's Motion for Compassionate Release, Alternatively, Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1). [DE 69.] Battle makes a number of arguments for his early release in a sprawling critique of BOP's failure to adequately respond to the COVID-19 pandemic. *See, e.g.*, *id.* at 16. In substance, he seeks a reduction

in his sentence to time served for three reasons. First, Battle asserts that his release is warranted because he contracted COVID-19 while incarcerated, his current institution has experienced "infection rates of epidemic proportions," and he faces ongoing medical issues, including symptoms similar to COVID-19, which are not being "comprehensively" tested and treated by BOP. *Id.* at 2–3, 11–12. Second, Battle argues, he should be released because BOP has failed to provide medical care for prisoners and never implemented its "official published plan to manage the COVID-19 pandemic." *Id.* at 3, 8–10, 14–17. Finally, Battle asserts that additional factors under 18 U.S.C. §§ 3553(a)(2)(A), (B), and (C) reflect that compassionate release is warranted. *Id.* at 3, 13. Because Battle fails to identify any extraordinary and compelling reasons warranting his early release from prison, the motion will be denied.

## Discussion

As amended by the First Step Act, § 3582(c)(1)(A) authorizes a defendant to seek a modification of an imposed term of imprisonment upon a showing that "extraordinary and compelling reasons warrant such a reduction." However, before filing a motion under this provision, Battle is required to "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf." 18 U.S.C. § 3582(c)(1)(A). The government concedes that Battle has satisfied the exhaustion requirement [DE 75 at 3; *see also* DE 69 at 5–6], so I can set that issue aside.

After the exhaustion issue, § 3582(c)(1)(A) next requires me to determine whether Battle presents "extraordinary and compelling reasons" that warrant a reduction of the

2

sentence I previously imposed, and thereafter, if necessary, consideration of the sentencing factors set forth in § 3553(a). *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021) (citing *United States v. Melgarejo*, 830 F. App'x 776, 778 (7th Cir. 2020)). While I must "consider[] the applicant's individualized arguments and evidence" and have broad discretion in determining what constitutes extraordinary and compelling reasons under the statute, ultimately, the burden is on Battle to establish "'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022); *Newton*, 966 F.3d at 488, 491 (citations omitted).

Battle presents several reasons in support of his request for compassionate release, all of which coalesce around the scourge of COVID-19 and BOP's response to it. But, for the reasons identified below, none present extraordinary and compelling reasons justifying his early release from prison.

Battle first argues that he should be immediately released from prison because he became infected with the COVID-19 virus while incarcerated, his former and current institutions have experienced "epidemic" infection rates, and he faces ongoing medical issues, including symptoms similar to COVID-19, which are not being "comprehensively" tested and treated by BOP. [DE 69 at 2–3, 10–12.] The government responds that these circumstances fail to meet Battle's burden because he has refused vaccinations and he does not suffer from any serious medical problems. [DE 75 at 14–15; DE 77-1 at 23.] Battle's arguments based on the risk to his physical health posed by the COVID-19 virus, in light of his cited medical conditions, do not present an extraordinary

and compelling reason for compassionate release.

Battle notes that he has tested positive for COVID-19 multiple times while in the custody of BOP. [DE 69 at 10 (citing two positive tests and three negative tests).] After testing positive, he was placed in a "segregated unit of infected inmates," but Battle argues that the situation fell short of a true "quarantine." *Id.* at 10–11. Battle also cites his "medical conditions of note," including markers for anemia (which he points out have "not reached a danger point"), asthma, and herpes zoster. *Id.* at 11. He claims that these conditions, of which BOP is evidently aware, have not "received comprehensive testing and treatment during the COVID-19 lockdown period, nor since [his] two COVID-19 infections," to make sure he has not developed any "complications" in conjunction with the COVID-19 virus. *Id.* at 11–12. Battle claims to suffer from "long-COVID" symptoms like "breathing difficulties, short-windedness, fatigue, aches in the bones, difficulty in concentrating and thinking, [and] loss of energy and strength." *Id.*

All of this speaks past a glaring issue: Battle refused vaccination in BOP custody. The Seventh Circuit has found that where an inmate has declined a vaccination against COVID-19 without an adequate medical justification, the existence of COVID-19 in the prison system is not an extraordinary and compelling reason for compassionate release. *United States v. Clemons*, No. 21-2440, 2022 WL 1436801, at *2 (7th Cir. May 6, 2022) ("Despite the threat of new coronavirus variants, we reiterate that an inmate's risk of COVID-19 cannot justify compassionate release absent an inability to receive or benefit from a vaccine."); *United States v. Broadfield*, 5 F.4th 801, 802–03 (7th Cir. 2021) ("[A]

4

prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred."); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021).

The record reflects that Battle "refused COVID immunization" in BOP custody. [*See* DE 77-1 at 23.] As a vaccine is undisputedly available to him, Battle's COVID-19 arguments run headlong into this Circuit's firm precedent that, for most prisoners, the availability of a vaccine "makes it impossible to conclude" that the risk of COVID-19 infection is an extraordinary and compelling reason warranting compassionate release. *Broadfield*, 5 F.4th at 803; *United States v. Kurzynowski*, 17 F.4th 756, 760–61 (7th Cir. 2021) ("Vaccinated prisoners in 2021 do not face the same risks of serious illness as they did in 2020."). While there are exceptions, "impossible" is a high bar. *See, e.g.*, *United States v. Barbee*, 25 F.4th 531, 533 (7th Cir. 2022) (upholding denial of compassionate release motion where prisoner cited Type II diabetes, hypertension, and obesity as risk factors for "lethal complications" from COVID-19, finding the request was foreclosed by the availability of an effective vaccine).

Since Battle has been offered a vaccine but refused it, his continued incarceration is unlikely to present any heightened risk of infection, as compared to the protections he would enjoy outside of the prison system. Battle neither demonstrates a reasonable medical justification for refusing the vaccine, nor suggests that the vaccine would not be effective to prevent his future infection with COVID-19. *Broadfield*, 5 4th at 802–03 (noting that data "do not establish or imply an incremental risk for prisoners—either a

5

risk of contracting the disease after vaccination or a risk of a severe outcome if a vaccinated person does contract the disease," as compared to the public at large).

What's more, under *Broadfield* and *Ugbah*, the availability of a vaccine means that even in prison, COVID-19 rarely presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility from which he or she is not expected to recover." U.S.S.G. § 1B1.13; 5 F.5th at 802–03; 4 F.4th at 596–97. As other courts have observed, the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Accordingly, even if he were vaccinated, Battle would further need to demonstrate that "his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *United States v. Melgarejo*, No. 12-CR-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020). He fails to do so. BOP discloses, as of September 14 as reported at www.bop.gov/coronavirus, 0 confirmed active cases among inmates and 8 among staff at FMC Lexington. In my view, these numbers demonstrate that the prison is responding appropriately to the risk the latest COVID variants pose to its inmate population, including Battle.

Finally, Battle fails to support the conclusion that his cited medical symptoms are not adequately handled by the care he has received from BOP or that his health is in fact being neglected. Based on the record before me, there is no evidence that BOP is failing to address urgent or life-threatening medical conditions suffered by Battle. Battle, a 49-year-old man, is not elderly or particularly unhealthy; and his cited, non-life-threatening conditions are treatable even in light of the persistence of COVID-19 in our society.

Battle's second main argument for compassionate release is based on BOP's failure to meet its statutory obligations to provide medical care for prisoners, including with respect to the promulgation of BOP's "official published plan to manage the COVID-19 pandemic." [*See* DE 69 at 3, 8–10, 14–17.] The argument is a little hard to follow, but Battle appears to claim that BOP failed to test inmates and staff regularly, failed to use "hard" lockdowns to stem coronavirus outbreaks, distributed inadequate masks to inmates, and continued to transfer inmates during the pandemic—and that these actions increase the health risks posed to inmates like Battle from COVID-19. *See id.* at 14 –17. Elsewhere, he asserts that BOP is lying about inmates' positive test results (presumably as a means to limit reporting higher infection counts), by reporting only "negative tests, as if to insinuate the inmate never contracted COVID-19, or if he did, it was not legally noticed by the Bureau or its staff." *Id.* at 10–11.

Battle's blunderbuss against the adequacy of BOP's response to the pandemic, including certain measures undertaken at FMC Lexington where he is incarcerated, does not present any extraordinary and compelling reason justifying his release. As the

7

government points out, BOP has implemented an action plan to mitigate the COVID-19 pandemic under the unique constraints presented in the prison system. [DE 75 at 3–6.] By all accounts, it has had its desired effect of curtailing significant, deadly outbreaks of COVID-19 in the prison system. While Battle attacks certain measures undertaken by BOP that he claims increase the health risks he faces while incarcerated, his motion is light on factual support for his claims. Battle's medical records and the mask exhibits that he attached to his motion fail to meet his burden to justify release based on the supposed inadequacy of BOP's best efforts to mitigate spread of the COVID-19 virus among prisoners. [*See* DE 69-2 at 2–4, 15–21.] What's more, publicly available data from BOP (www.bop.gov/about/statistics/population_statistics.jsp) reflects that the prison population has also shrunk since the start of the pandemic, which has the effect of reducing crowding in federal prisons. For all of these reasons, and in light of the previously cited case count statistics at FMC Lexington, Battle's second bundle of arguments fails to establish extraordinary and compelling reasons justifying his release.

Given my determination that Battle fails to show extraordinary and compelling reasons justifying his release, I do not need to address whether the sentencing factors under 18 U.S.C. § 3553(a) warrant his early release from prison. *Newton*, 37 F.4th at 1207 (citing *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (applicable sentencing factors in § 3553(a) need to be considered only if the sentencing judge finds an extraordinary and compelling reason for relief). For completeness, however, I will add that the § 3553(a) factors do not come close to weighing in Battle's favor. 18 U.S.C.

§ 3553(a). While in a position of public trust, Battle operated a criminal enterprise that put dangerous drugs on the streets of the community he represented. After law enforcement caught him red-handed, he shot and killed one of his drug associates. Reducing Battle's sentence to time served would not reflect the gravity of these offenses, promote respect for the rule of law, or provide just punishment. 18 U.S.C. § 3553(a)(2)(A). And releasing Battle with significant time remaining on his sentence would fail to adequately deter such criminal conduct. *Id.* § 3553(a)(2)(B).

## Conclusion

I do not diminish the reality or seriousness of Robert Battle's health issues. But for the foregoing reasons, I find that Battle fails to present "extraordinary and compelling reasons" warranting a reduction of his sentence. The Bureau of Prisons is providing adequate care to Battle based on the medical records submitted to my attention, and Battle fails to demonstrate that he is unable to receive or benefit from a vaccine. Although we are now facing various coronavirus variants, we now have the additional protection of vaccines that have proven effective in reducing the rate of infection and in mitigating the seriousness of symptoms in the event of infection with the virus. *Accord Broadfield*, 5 F.4th at 803 ("[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order.").

ACCORDINGLY:

Defendant Robert Battle's Motion for Compassionate Release, Alternatively,

Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1) [DE 69] is **DENIED**.

**SO ORDERED.**

ENTERED: September 14, 2022.

/s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT